## IN THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF NORTH CAROLINA CHARLOTTE DIVISION

## CIVIL CASE NO. 3:08cv73

|  |  |  |
|---|---|---|
| MEINEKE CAR CARE CENTERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION** |
| L.A.C. 1603 LLC, DONALD RICHARD LAINER, ANDREA DORIS PATRIZI, and LOUIS PATRIZI, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Default Judgment [Doc. 19], filed April 1, 2008.

## PROCEDURAL HISTORY

On February 22, 2008, the Plaintiff filed its Verified Complaint and Motion for a Preliminary Injunction. [Docs. 1, 2]. On March 7, 2008, the Plaintiff filed its Affidavits of Service as to each of the Defendants. [Docs. 10, 12, 14 and 16]. On April 1, 2008, the Clerk of Court entered default against the Defendants. [Doc. 20]. The Plaintiff moved for Default

Judgment on April 1, 2008. [Doc. 19].

## DISCUSSION

The Plaintiff sued the Defendants to terminate the parties' franchise agreement as a result of their failure to pay contractually required fees. The Meineke Franchise and Trademark Agreement [Doc. 1-2] provides that upon termination of the agreement, the Defendants were to pay all royalties, advertising fees, amounts owed for purchases from Meineke and other amounts owed to Meineke "which are then unpaid." [Id., at ¶15.1]. Meineke has attached to its motion the Affidavit of Michael Carlet, Chief Financial Officer, in which he testifies that as of the date of termination, February 14, 2008, the Defendants owed Meineke $38,688.60 for outstanding franchise fees, $63,514.49 for outstanding advertising contributions, $7.31 for equipment fees, $215.00 for computer software maintenance fees and $455.00 for insufficient funds fees. [Doc. 1-7 at ¶16]. Carlet attached an exhibit to his affidavit showing the computation of these sums totaling $102,880.40. [Id.; Doc. 1-8].

However, in addition to these sums which were unpaid at the time of termination, Meineke also seeks to recover for the loss of prospective fees due to the early termination of the franchise. Meineke claims it will take

approximately three years to re-franchise the business, and based thereon sets forth a formula by which it calculates the prospective fees which it estimates it might have collected from the Defendants during that three year period.

The franchise agreement, however, does not provide fir the recovery of such prospective fees.  Sections 3.2 and 3.4 of the agreement set out the fees Defendants are obligated to pay.  These consist of "royalty fees" and "contributions to Meineke Advertising Fund."  The amounts due pursuant to both of these provisions, however, are calculated based on a percentage of Defendants' sales, eight percent of gross revenues for the Advertising Fund plus royalties consisting of the aggregate of different percentages of sales for different products (e.g., 7% of wiper blade sales, 3% of oil change revenue).  When Plaintiff terminated the franchise agreement, Plaintiff terminated the Defendants' ability to generate any revenues from the sale of Meineke products which would, in turn, generate any liability for "royalty fees" under Section 3.2 or Advertising Fund fees under Section 3.4.  Any percentage of zero is zero.  Thus, the franchise agreement makes no provision for the Plaintiff to recover any amounts from Defendant for periods subsequent to the termination of the agreement.  In fact, Section 15.1 of the agreement states

> You [Defendants] agree to pay us [Meineke] and our Affiliates immediately upon termination or expiration (without grant of a successor franchise) of this Agreement, all royalties, MAF [Advertising Fund] payments, amounts owed for purchases from us or our Affiliates, interest due on any of the foregoing and all other *amounts owed* to us or our Affiliates which are then unpaid. (emphasis added).

That provision is clearly not prospective in nature. It does not contemplate the Defendants being obligated for any "future" royalties or fees. Likewise, Section 15.5 reads

> All obligations under this Agreement which *expressly or by their nature survive* the expiration or termination of this Agreement will continue in full force and effect until they are satisfied in full or by their nature expire. (emphasis added).

The provisions requiring the payment of the royalties and Advertising Fund fees do not "expressly or by their nature survive." Any obligation for such royalties and fees ended with the termination of the franchise agreement.

Since it has been determined that Plaintiff is not entitled to ay future royalties or fees pursuant to the terms of the agreement, it appears that Plaintiff seeks the three years of future payments as damages on a theory that it is entitled to recover lost profits stemming from the Defendants' breach which resulted in the termination. Lost profits, however, are recoverable only under limited circumstances. <u>Keith v. Day</u>, 81 N.C.App. 185, 195-96, 343 S.E.2d 562, 568-69 (1986) ("Lost profits are recoverable in a breach of contract action 'when it is made to appear (1) that it is

reasonably certain that such profits would have been realized except for the breach of the contract, (2) that such profits can be ascertained and measured with reasonable certainty, and (3) that such profits may be reasonably supposed to have been within the contemplation of the parties, when the contract was made, as the probable result of the breach.'");
Honey Dew Associates, Inc. v. M & K Food Corp., 241 F.3d 23, 28-29 (1st Cir. 2001).

In addition to the fact that the franchise agreement does not contain a provision for the recovery of lost profits or royalties, it also does not contain a provision relating to a three year period. Meineke's claim that it usually takes it three years to re-franchise a business is speculative. Mosley & Mosley Builders, Inc. v. Landin Ltd., 87 N.C.App. 438, 446, 361 S.E.2d 608 (1987) ("[W]hen prospective profits are conjectural, remote, or speculative, they are not recoverable."). Meineke seeks a default judgment for three years of prospective losses even though it might re-franchise the business within one year or less. Moreover, although Meineke has set forth a formula for computing such prospective fees, it has neither shown nor alleged that at any time during its franchise with the Defendants the business was profitable. Mosley, supra., ("If an established business is wrongfully interrupted, the damages can be proved

by showing the profitability of the business for a reasonable time before the wrongful act.").  In another case involving Meineke in this District, such prospective relief was denied.

> [The defendant] represent[ed] that he [could] not understand how Meineke can claim three years [] in lost prospective profits when the franchise itself was not generating sufficient income to operate at a profit–[an argument that] highlights a gaping hole in Meineke's proof. [T]o recover prospective profits (here, in the form of prospective franchise fees and advertising contributions), Meineke must prove, *inter alia*, that "it is reasonably certain that such profits would have been realized except for the breach of the contract."

Meineke Car Care Centers, Inc. v. Duvall, 2007 WL 1100841 **1-2 (W.D.N.C. 2007).

Despite the fact that this case is in the procedural posture of default, the franchise agreement itself does not provide for the relief of prospective lost profits or royalties.  In any event, Meineke has failed to prove that such profits would have been realized.  The Court therefore will not enter default judgment against the Defendants for those sums.

Based on these reasons, the Court will find as fact and conclude as a matter of law that the damages to which Plaintiff is entitled as a result of the breach of the Defendants is $102,880.40, as set out in paragraph 16 of the Affidavit of Michael Carlet that is attached to the Complaint in this matter.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Default

Judgment [Doc. 19] is hereby **GRANTED IN PART AND DENIED IN PART**

and Default Judgment is entered simultaneously herewith.

Signed: April 23, 2008

Martin Reidinger
United States District Judge